# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DONNA LASATER,** | } |
| Plaintiff, | } } } |
| v. | } } Case No.: 2:25-CV-00148-RDP |
| **FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY**[1], | } } } } |
| Defendant. | } |

## MEMORANDUM OPINION

Plaintiff Donna Lasater filed this action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability and Disability Insurance Benefits ("SSDI") and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g) and 1383(c). After careful review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff completed applications for a period of disability, disability insurance benefits, and supplemental security income on June 12, 2020. (Tr. 620-36). The applications were originally denied by the Social Security Administration ("SSA") on October 28, 2020, and again on reconsideration on April 8, 2021. (Tr. 150-83, 186-245). After a hearing held on September 29, 2021 (Tr. 58-79), Administrative Law Judge ("ALJ') Brian Dougherty denied Plaintiff's claim. (Tr. 248-69). That decision was appealed and remanded for a second hearing. (Tr. 270-74). After

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the court substitutes Commissioner Bisignano as the defendant in the action. *See* Fed R. Civ. P. 25(d) (Although the public officer's "successor is automatically substituted as a party when the predecessor no longer holds office, the "court may order substitution at any time . . . .").

a second hearing was held on November 2, 2022, ALJ Dougherty issued a December 19, 2022 decision finding that Plaintiff was not disabled. (Tr. 279-91). On March 19, 2024, the Appeals Council granted Plaintiff's request for review, vacated the hearing decision, and remanded the case to an ALJ. (Tr. 305-06).

After a third hearing held before ALJ Gary Suttles on August 14, 2024 (Tr. 80-112), ALJ Suttles issued an August 26, 2024 decision finding that Plaintiff was not disabled. (Tr. 17-29). The Appeals Council denied Plaintiff's request for review, making ALJ Suttles's decision the final decision of the Commissioner. (Tr. 1-3, 591-93). Plaintiff appealed to the district court, and this case is now ripe for review.

### A.     August 14, 2024 Hearing

At the August 14, 2024 hearing before the ALJ, Plaintiff testified that she is 45-years-old, 5'6" tall, and weighs 240 pounds. (Tr. 83, 91). Plaintiff stated that she has had asthma her entire life, carries an inhaler, and has a breathing machine at home. (Tr. 88-89). She also has thyroid problems and has been taking medication for that since 2010. (Tr. 89). She has seen a specialist for her thyroid every four months since 2010. (Tr. 90). That doctor also treats her diabetes, for which she takes medication. (*Id.*).

Plaintiff has neuropathy associated with her diabetes that causes numbness in her hands and feet. (Tr. 91). The neuropathy makes it difficult for her to open jars/bottles and write. (Tr. 107). She has also taken Gabapentin for her neuropathy for around six years. (Tr. 91).

Plaintiff also takes medicine for acid reflux and blood pressure. (Tr. 93). For her acid reflux, her primary care doctor prescribed Omeprazole, and she has been taking that for over ten years. (*Id.*). She sees her primary care doctor for refills every three to four months. (*Id.*). She also sees a specialist for her liver every six months. (Tr. 94).

Plaintiff sees a mental health counselor and a psychiatrist. (*Id.*). She has been diagnosed with anxiety, depression, and panic attacks. (*Id.*). She sees a counselor every month and her psychiatrist every three months for medication refills. (*Id.*). She takes Wellbutrin and Cymbalta. (*Id.*).

Plaintiff testified that she has trouble sitting for long periods of time because of her back. (Tr. 97). She was diagnosed with degenerative disc disease and osteoarthritis. (*Id.*). To treat these conditions, she has a TENS machine and takes a muscle relaxer, meloxicam, Gabapentin, and Tylenol. (Tr. 97-98). She has also taken Percocet, oxycodone, and hydrocodone at the emergency room in the past but she does not currently take those drugs. (Tr. 98). At the time of the hearing, she testified that on a scale of one to ten, her pain was an eight. (*Id.*).

Plaintiff's doctors have suggested surgery on her lower back, but she has elected not to have the surgery because she is afraid that it might worsen her condition. (Tr. 99). She had injections in her back and neck in 2023 to help with her pain and has also had "several" other shots over the years. (*Id.*). She has also completed some physical therapy. (Tr. 100-01).

Plaintiff testified that she was married but has been separated from her husband since 2017. (Tr. 83). Her husband does not work. (*Id.*). She has a 19-year-old daughter who lives with her father. (Tr. 84, 86). Plaintiff has lived with her boyfriend for the last two years. (Tr. 84). Her boyfriend has a full-time job. (*Id.*).

Plaintiff has not worked a full-time job since February 2016. (Tr. 85). She previously worked at a nursing home in the dietary department washing dishes, sometimes cooking, and helping with packing carts. (*Id.*). She left that job because of her "health condition," and because she was "too slow." (*Id.*). She did not have any income at the time of her hearing but has received food stamps since 2016. (*Id.*). She had Medicaid but believed she would lose her coverage when

her daughter turned 19. (Tr. 85-86). Plaintiff has been supported by her boyfriend since 2022. (Tr. 86). Before 2022, she was supported by a previous boyfriend for four years. (*Id.*).

Plaintiff finished high school but received a certificate instead of a diploma because she did not pass the graduation exam. (Tr. 87). Plaintiff was in special education classes but states she can read and write. (*Id.*). Plaintiff has a driver's license and was able to drive as of the date of the hearing. (Tr. 101). She can grocery shop and help clean the house. (*Id.*). She washes her clothes and does the dishes. (Tr. 102).

Plaintiff took a trip to Panama City, Florida with her boyfriend in 2024. (Tr. 103-04). She also visits her mother and aunt in Tennessee. (*Id.*). During the hearing, it was revealed that within the relevant period Plaintiff had gone to clubs with her sister to "listen to music." (Tr. 105-07).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id.* § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. *Id.* § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. *Id.* § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability. *Id.* § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See id.*

§§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e).

In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id.* § 404.1520(a)(4)(v).

In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. *Id.* § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2020, and that Plaintiff had not engaged in substantial gainful activity since March 12, 2020, her alleged onset date of disability. (Tr. 19). Based on the medical evidence presented, the ALJ concluded that Plaintiff had the following severe impairments: lumbar spondylosis, osteoarthritis of the left knee, diabetes mellitus type II with polyneuropathy, obesity, bipolar disorder, and anxiety. (*Id.*) Nevertheless, the ALJ determined that none of Plaintiff's impairments or combination of impairments met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix 1. (Tr. 20).

After consideration of the record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations:

> [S]he can lift and carry 20 pounds occasionally and 10 pounds frequently; she can sit, stand and walk six of 8 hours each for a full 8 hour day; she has unlimited push/pull and gross/fine dexterity except for occasionally push/pull with the lower extremities, bilaterally and frequent hand use, bilaterally; she can occasionally climb stairs, but no ladders or running; she can occasionally bend, stoop, crouch, balance, twist and squat; she can have no more than occasional exposure to heights and dangerous machinery; she can understand simple instructions; concentrate/perform simple tasks and respond/adapt to workplace changes/supervision but within an occasional public/employee contact setting.

(Tr. 22). In making this determination, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but Plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 23).

Based on this RFC, the ALJ determined that Plaintiff has no past relevant work experience but, "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 27-28). Finally, the ALJ concluded that Plaintiff has not been under a disability from March 12, 2020 through the date of the ALJ decision. (Tr. 29). So, this decision determined that Plaintiff is not entitled to a period of disability and disability insurance benefits and supplemental security income. (Tr. 29).

## III.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial

evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**IV.  Discussion**

Plaintiff appeals the ALJ's denial of a period of disability and disability insurance benefits and supplemental security income. Plaintiff argues that the ALJ's determination is not supported by substantial evidence. (Doc. # 14 at 5-21).

When a claimant seeks to establish disability based on subjective pain testimony and symptoms, the Eleventh Circuit's pain standard applies. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (citing *Landry v. Heckler*, 782 F.3d 1551, 1553 (11th Cir. 1986)); *see Jones v. Comm'r, Soc. Sec. Admin.*, No. 22-13659, 2023 WL

7

7294879 (11th Cir. Nov. 6, 2023) (unreported); *see also* 20 C.F.R. § 404.1529. Thus, a claimant's testimony about her pain does not alone suffice to establish a disability. *See* 20 C.F.R. § 404.1529(a).

In appropriate cases, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms" to determine how those symptoms "limit [the claimant's] capacity for work." *Id.* § 404.1529(c)(1). In evaluating the intensity and persistence of the alleged pain, the ALJ will consider objective medical evidence but not discount the claimant's subjective statements. *See id.* § 404.1529(c)(2). The ALJ also considers nonmedical evidence presented in support of alleged pain symptoms because pain is "subjective and difficult to quantify." *Id.* § 404.1529(c)(3). But, the ALJ is called on to evaluate the evidence, including the claimant's statements about pain, "in relation to the objective medical evidence and other evidence" in its entirety and considers "whether there are any inconsistencies" or any "conflicts between [the claimant's] statements and the rest of the evidence." *Id.* § 404.1529(c)(4).

### A. The ALJ properly considered Plaintiff's treatment at The Orthopedic Center and Athens Limestone Pain Center.

Plaintiff first argues that "[t]he ALJ overlooked parts of [] Plaintiff's medical record when making his determination." (Doc. # 14 at 9). Specifically, Plaintiff claims that "[t]he ALJ did not properly consider [] Plaintiff's treatment" at The Orthopedic Center and Athens Limestone Pain Center. (*Id.*).

Plaintiff received her first pain relief injection in June 2019. (Tr. 1149). After that injection, in November 2019, Plaintiff received treatment from The Orthopedic Center. (Tr. 1141-48). During her physical exam, Plaintiff was stable, balanced, and able to walk heel to toe. (Tr. 1142). She also tolerated deep squats. (*Id.*). Dr. Hatfield reviewed Plaintiff's MRI and observed that she had an asymmetric extradural defect on the left, potentially obscuring the left S1 (first sacral) nerve

root. (Tr. 1143). Dr. Hatfield referred Plaintiff to pain management and noted that she might eventually need spine surgery. (*Id.*).

In 2020, Plaintiff received pain management treatment with Athens Limestone Pain Center. (Tr. 987-1008). At a visit in January 2020, Plaintiff told N.P. Christopher that she had lower back and neck pain but received 80% relief from her first lumbar epidural steroid injection ("ESI"). (Tr. 990). Plaintiff's pain returned after the injection. (*Id.*). During Plaintiff's physical exam, N.P. Christopher noted that Plaintiff had decreased range of motion with extension in her lumbar spine. (Tr. 993). Plaintiff's MRI also showed disc impingement at the S1 nerve root. (*Id.*). N.P. Christopher scheduled Plaintiff for another lumbar ESI to treat her pain. (*Id.*). However, Plaintiff cancelled the lumbar ESI because she could only receive five in a year. (Tr. 996).

At a visit in February 2020, after cancelling her injection, Plaintiff reported that her pain was at a 5 out of 10. (Tr. 996). N.P. Christopher again scheduled Plaintiff for a lumbar ESI. (Tr. 999). Plaintiff received her second lumbar ESI on March 5, 2020. (Tr. 1002). At a follow-up visit with N.P. Christopher on April 1, 2020, Plaintiff reported 50% relief from the ESI but stated that she continued to hurt. (Tr. 1006). Plaintiff told N.P. Christopher that she "may call [the pain center] back when she decides she needs another ESI or if she feels she wants to try Cervical ESI." (*Id.*). Because of the COVID-19 pandemic and restrictions on elective procedures, Plaintiff could not receive another ESI at that time. (*Id.*).

After her treatments with Athens Limestone Pain Center, Plaintiff again received treatment from The Orthopedic Center. (Tr. 1132-73). At a visit on May 11, 2020, Plaintiff told Dr. Boyett that her pain had gotten significantly worse over the past year, and, contrary to her prior reports, she did not have any pain relief from the injections she previously received. (Tr. 1135). Dr. Boyett noted that Plaintiff had a small focal disc protrusion to the left at L5-S1 (the lumbosacral joint, comprised of the fifth lumbar vertebra and the first sacral vertebra). (Tr. 1137-38). Dr. Boyett

recommended a lumbar ESI to treat Plaintiff's pain, but Plaintiff did not receive the injection because of COVID-19 and her fibroid removal surgery. (Tr. 1138, 1615).

Eleven months later, at a visit to The Orthopedic Center in April 2021, Plaintiff again presented with back pain. (Tr. 1617). Dr. Boyett noted that Plaintiff had a L5-S1 lateral recess and disc herniation, and bilateral L3-4 and L4-5 facet arthropathy. (*Id.*) Dr. Boyett recommended an interlaminar epidural steroid injection (ILESI) to treat Plaintiff's pain. (*Id.*).

Plaintiff received the ILESI and visited The Orthopedic Center for follow-up in May 2021. (Tr. 1611). At the visit, she reported 40% pain relief after the injection and rated her pain at a 5 out of 10. (*Id.*). She told Dr. Boyett that any pain that remained after the injection was "tolerable." (Tr. 1613).

Fourteen months later, in July 2022, Plaintiff returned to The Orthopedic Center. (Tr. 1794). At this visit, she rated her pain a 6 out of 10 and informed Dr. Boyett that the pain she had before the injection had returned. (Tr. 1796). Because Plaintiff received relief from the prior ILESI, Dr. Boyett recommended another injection, which she received later that month. (*Id.*, Tr. 1800).

Plaintiff's follow-up from the injection occurred on August 10, 2022. (Tr. 1968). At this appointment, Plaintiff reported that she received 80-90% relief from the injection but still rated her pain a 5 out of 10. (Tr. 1968, 1971). Dr. Boyett recommended physical therapy to help reduce her residual pain. (Tr. 1971). Plaintiff underwent physical therapy but discontinued treatment because she was not making progress. (Tr. 1978).

Although Plaintiff claims that "[t]he ALJ did not properly consider [] Plaintiff's treatment" at The Orthopedic Center and Athens Limestone Pain Center (Doc # 14 at 9), as the Eleventh Circuit has explained, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" so long as there is enough evidence to conclude that the ALJ considered Plaintiff's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th

10

Cir. 2005). And in this case, the ALJ considered Plaintiff's treatment at The Orthopedic Center and Athens Limestone Pain Center. While the ALJ stated that Plaintiff "does not see a pain specialist" and "did not receive regular injections for pain," the ALJ addressed Plaintiff's lumbar ESIs in his analysis, stating that Plaintiff "reported significant pain relief with lumbar epidural steroid injections." (Tr. 24 (citing Tr. 1611-25)). The ALJ reviewed Plaintiff's visit to The Orthopedic Center in July 2022 and the injection she received that month which gave her "80-90% pain relief." (Tr. 24 (citing Tr. 1968-93)). The ALJ also discussed Plaintiff's May 2023 injection but indicated that "those records were not available for review." (Tr. 24 (citing Tr. 2177-206)).

Further, Plaintiff argues that the ALJ "ignored the significance of" Plaintiff's treatment with The Orthopedic Center and Athens Limestone Pain Center. (Doc. # 14 at 13). But, this court is not permitted to reweigh the evidence or second guess the significance of individual medical records. *See Martin*, 894 F.2d at 1529. Rather, this court may only review the ALJ's decision as a whole to determine if it is reasonable and supported by substantial evidence. *Id.* Accordingly, after review, the court finds that the ALJ properly considered Plaintiff's treatment from The Orthopedic Center and Athens Limestone Pain Center.

**B.     The ALJ properly considered Plaintiff's reported daily activities.**

Second, Plaintiff argues that the ALJ's review of Plaintiff's daily activities "omits the limitations" Plaintiff described elsewhere in the record. (Doc. # 14 at 15-16). In her July 2020 Function Report, Plaintiff reported that she dressed herself, watched TV, made lunch, rested, sometimes did dishes, and only did housework when she felt like it. (Tr. 715). She also stated that she could prepare her own meals, but if it was a cooked meal, she had to sit down while cooking. (Tr. 717). She did laundry one to two times a week, dishes around three times a week, and swept and mopped once a month. (*Id.*). Sometimes she would have to ask her boyfriend to help her with these tasks, and sometimes she could not stand for long because of her pain. (*Id.*). She explained

11

that she did not like spending time with others due to her depression and anxiety, but if she did, it was typically on Sundays at church. (Tr. 719-20).

However, at an appointment in March 2023 with the Mental Health Center of North Central Alabama, Plaintiff told Social Worker Percell that she had been helping her sister around the house which kept her busy and on her feet more. (Tr. 2265). She also reported that she had been going to karaoke with her family and met new friends. (*Id.*). Further, in her testimony before the ALJ in August 2024, Plaintiff explained that she went to Panama City, Florida with her boyfriend and visited her aunt in Tennessee at Christmas. (Tr. 103-104).

In determining Plaintiff's RFC, the ALJ referenced Plaintiff's Function Report where she reported that she had trouble getting along with others. (Tr. 25). But, based on other evidence in the record, including Plaintiff's consultative exam and testimony about going to karaoke, the ALJ determined that the record does not support more social limitations than those included in the RFC. (Tr. 25 (citing Tr. 715-22, 1215-54, 1356-63, 1395-33, 1555-83, 1726-62, 1994-2116, 2207-74, 2310-19)).

The ALJ also determined that Plaintiff's activities of daily living are consistent with her RFC but appear to be in conflict with her testimony that she has to take a one to two hour nap every day. (Tr. 25). As described in the ALJ's decision, when making this determination, the ALJ considered the following: Plaintiff's Third-Party Function Report, which was completed by her boyfriend Robert Davis (Tr. 707-14); Plaintiff's self-completed Function Report (Tr. 715-22); progress notes and medical records from Plaintiff's treatment at Mental Health Center of North Central Alabama (Tr. 1215-354, 1395-433, 1555-83, 1726-62, 1994-2116, 2207-74); psychology treatment records from Dr. Jon Rogers (Tr. 1356-63); treatment records from Mental Health at Athens Limestone Counseling Center (Tr. 2310-19); and Plaintiff's own testimony (Tr. 80-112). The ALJ also explained that Plaintiff had not received the type of treatment one typically associates

12

with the level of limitations Plaintiff alleges and described why he did not give weight to other medical opinions, prior administrative medical findings, and evidence in the record. (Tr. 22). Further, Plaintiff concedes that "the ALJ did not rely solely on [] Plaintiff's daily activities to conclude her subjective complaints were inconsistent with the record." (Doc. # 14 at 17).

Ultimately, Plaintiff disagrees with the ALJ's evaluation of her claim and cites other evidence she contends supports a different conclusion. But again, this court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). This court's role is limited to reviewing the ALJ's findings and determining whether substantial evidence supports them. *See Martin*, 894 F.2d at 1529.

In this case, the ALJ clearly articulated why Plaintiff's allegations regarding the nature and severity of her symptoms and functional limitations were only partially consistent with the record. (Tr. 22-27). And, as discussed above, that finding was supported by substantial evidence in the record. Contrary to Plaintiff's contention that the ALJ ignored favorable evidence from Plaintiff's own testimony regarding her pain, there is no requirement that an ALJ discuss every piece of evidence, so long as the decision is not a broad rejection that prevents meaningful review. *See Dyer*, 395 F.3d at 1211. Here, the ALJ's decision was not such a broad rejection and adequately demonstrates that the ALJ considered Plaintiff's medical condition as a whole. Accordingly, the court finds that the ALJ's decision denying Plaintiff's application was supported by substantial evidence.

**V.     Conclusion**

The court concludes that the ALJ applied the correct legal standards in determining Plaintiff's residual functional capacity, and the decision is supported by substantial evidence. The

13

Commissioner's final decision is due to be affirmed. A separate order in accordance with this Memorandum of Decision will be entered.

    **DONE** and **ORDERED** this January 26, 2026.

                                                                        _____
                                                                        **R. DAVID PROCTOR**
                                                                        SENIOR U.S. DISTRICT JUDGE